# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 21-1461V

CHARLES WALTER,

                Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                Respondent.

Chief Special Master Corcoran

Filed: February 27, 2024

*Ronald Craig Homer, Conway, Homer, P.C., Boston, MA, for Petitioner.*

*Kimberly Shubert Davey, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On June 11, 2021, Charles Walter filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he experienced Guillain-Barré syndrome ("GBS"), a defined Table Injury, due to an influenza vaccine received on August 22, 2018. Petition at 1, ¶ 2. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. After Respondent conceded entitlement, the parties were unable to resolve damages on their own,[3] so I ordered briefing on the matter.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Nine months after Petitioner was determined to be entitled to compensation, he informed me that the parties had reached an impasse in their damages discussions and proposed a briefing schedule. Status Report, filed March 24, 2023, ECF No. 47.

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount $**130,000.00 for actual pain and suffering, plus $1,618.16 for past unreimbursed expenses.**

I.      **Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of*

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of GBS claims, were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

*Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

## II.     The Parties' Arguments

Emphasizing his delayed GBS diagnosis and forced early retirement, Petitioner maintains he is entitled to a pain and suffering award in the amount of $140,000.00. Petitioner's Memorandum in Support of Damages ("Brief"), May 8, 2023, at 19-25, ECF No 50. He also seeks $1,618.16, for unreimbursed expenses and mileage driving to and from medical appointments. *Id.* at 16-17. In calculating the later, Petitioner utilizes the Internal Revenue Service ("IRS") business rate, as opposed to the lower rate used for medical expenses. Exhibit 32, Tab B, filed May 5, 2023, ECF No. 48-2.

To support the past pain and suffering award he seeks, Petitioner cites five comparable cases: *Castellanos, Sand, Shankar, Weil,* and *W.B.*[5] – in which awards ranging from $125,000.00 to $155,000.00 were issued. Brief at 25-26. Acknowledging that several of these petitioners experienced longer hospitalizations and required inpatient rehabilitation, he argues that his hospitalization likely would have been longer, and treatment more similar, but for his difficulty obtaining a correct GBS diagnosis earlier in his course. *Id.* at 27-30. For example, he notes that he was discharged from his second hospitalization after three days, and before undergoing a lumbar puncture, due to a misdiagnosis of statin myopathy.[6] Brief at 27-30.

Respondent counters that Petitioner's past pain and suffering award should be $58,000.00 – an amount less than half of the lower end of the range reflected in the five cases cited by Petitioner. Respondent's Brief on Damages ("Opp."), filed June 26, 2023, at 6, ECF No. 51. Characterizing Petitioner's GBS illness as mild, Respondent emphasizes the short duration of Petitioner's hospitalizations (only one and three days, respectively), the lack of any inpatient rehabilitation, the receipt of IVIG treatment on an outpatient basis at home, and the quick recovery Petitioner experienced thereafter. *Id.* at

---

[5] *Castellanos v. Sec'y of Health & Hum. Servs.,* No. 19-1710V, 2022 WL 1482497 (Fed. Cl. Spec. Mstr. Mar. 30, 2022) (awarding $125,000.00 for actual pain and suffering); *Sand v. Sec'y of Health & Hum. Servs.,* No. 19-1104V, 2021 WL 4704665 (Fed. Cl. Spec. Mstr. Aug. 31, 2021) (awarding $130,000.00 for actual pain and suffering); *Shankar v. Sec'y of Health & Hum. Servs.,* No. 18-1382V, 2022 WL 2196407 (Fed. Cl. Spec. Mstr. May 5, 2022) (awarding $135,000.00 for actual pain and suffering); *Weil v. Sec'y of Health & Hum. Servs.,* No. 21-0831V, 2023 WL 1778281 (Fed. Cl. Spec. Mstr. Feb. 6, 2023) (awarding $140,000.00 for actual pain and suffering); *W.B. v. Sec'y of Health & Hum. Servs.,* No. 18-1634V, 2020 WL 5509686 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $155,000.00 for actual pain and suffering).

[6] Myopathy is "any disease of a muscle." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 1224 (32nd ed. 2012).

6-8. Respondent insists that Petitioner's assertions related to his shorter hospitalizations (that they resulted, in part, from his misdiagnosis) and to his premature retirement (that it can be attributed to his GBS illness) are speculative. *Id.* at 7-9.

Respondent also repeats arguments, previously made in other SPU cases, related to the importance of past proffered amounts and the appropriate rate to use when calculating mileage reimbursements. Opp. at 10, 12-17. Asserting that I should rely primarily on amounts he has proffered in past cases when ascertaining the appropriate award in this case, Respondent insists that the amount he proposes is fair. *Id.* at 10. He also reiterates his past assertion that, when calculating the amount to be reimbursed for mileage traveled to and from medical appointments, I should utilize the lower IRS medical mileage rate, rather than IRS business rate which generally has been used in the Vaccine Program. *Id.* at 13-17; *see infra* Section IV (for a further discussion of the caselaw cited by Respondent).

On reply, Petitioner counters Respondent's arguments that a delayed diagnosis is common in GBS cases, and thus should not dictate a higher pain and suffering award, that his GBS illness resolved quickly and did not necessitate his early retirement, and that past proffered awards are the most accurate gauge of what should be awarded in this case. Petitioner's Reply to Opp., filed July 7, 2023, at 3-10, ECF No. 52. While not disputing Respondent's characterization of his GBS illness as mild, Petitioner stresses that other petitioners with similarly-mild GBS symptoms have received past pain and suffering awards in the same range as he now seeks. *Id.* at 2-3. Regarding the parties' mileage rate dispute, Petitioner argues that I should continue to follow the carefully considered and sound reasoning in *Williams*. *Id.* at 10-14 (discussing *Williams v. Sec'y of Health & Hum. Servs.,* No. 99-2239V, 1996 WL 608455 (Fed. Cl. Spec. Mstr. Oct. 10, 1996) (holding the IRS business mileage rate should be used in vaccine cases).

## III.   Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

In performing this analysis, I have reviewed the record as a whole, including the medical records, affidavits, and all assertions made by the parties in written documents. I considered prior awards for pain and suffering in both SPU and non-SPU GBS cases and rely upon my experience adjudicating these cases.[7] However, I ultimately base my

---

[7] Statistical data for all GBS cases resolved in SPU by proffered amounts from inception through January 1, 2024 reveals the median amount awarded to be $171,133.72. The awards in these cases - totaling 364,

determination on the circumstances of this case.

The evidence shows that Petitioner – age 62 when vaccinated - suffered a mild GBS illness, with an acute phase lasting only a few months. However, his suffering during the first months of his illness was heightened by the difficulties he encountered obtaining an accurate GBS diagnosis. After his first, brief hospitalization (from September 3-4, 2018), Petitioner was discharged with instructions to follow-up with the neurologist who treated him a week later, and to return if his symptoms worsened. Exhibit 11 at 17. His diagnosis was listed as either GBS or diabetic amyotrophy. *Id.* at 28. The next day, Petitioner called his primary care physician reporting that he was returning to the hospital because he fell and was unable to get up. Exhibit 2 at 201. When he returned to the emergency room on September 6, 2018, Petitioner was hospitalized again - this time for three days, and misdiagnosed as not having GBS, but rather statin myopathy or moderate peripheral neuropathy. Exhibit 6 at 22. Petitioner was not correctly diagnosed with GBS until seen by the neurologist who treated him during his initial hospitalization, thirteen days thereafter, and undergoing EMG testing on September 25, 2018. Exhibit 2 at 376, 395-396.

Although his earlier pain had resolved by the time of his GBS diagnosis, Petitioner's weakness had progressed. Exhibit 2 at 391, 394. Still, Petitioner's symptoms were still mild enough, even then, to allow for treatment on an outpatient basis. From October 9 through 13, 2018, Petitioner received IVIG therapy at home. Exhibit 12. And he showed significant improvement thereafter. At a follow-up appointment with his neurologist on October 23, 2018, it was noted that Petitioner had "responded well to IVIG therapy, [that his] lower extremity [and] strength had improved, [and that his] pain and paresthesias ha[d] also essentially resolved." Exhibit 7 at 13.

Petitioner maintains that he was forced to retire earlier than planned from his job as a supply manager at Total Oil and Gas, but the record does not support his assertion. *See* Exhibit 22 at ¶¶ 1, 6 (Petitioner's affidavit). Although some residual GBS symptoms such as ongoing fatigue undoubtedly played some part in Petitioner's decision, his age and other unrelated conditions likely did as well. Furthermore, Petitioner did not retire until July 2019, more than six months after returning to work at the end of December 2018, and well after his GBS symptoms had greatly improved. And he did so pursuant to an

have typically ranged from $128,645.56 to $256,835.75, representing cases between the first and third quartiles and awards comprised of all categories of compensation – including lost wages. 47 cases include the creation of an annuity to provide for future expenses.

Past pain and suffering amounts awarded in substantive decisions issued in 34 SPU GBS cases range from $92,500.00 to $192,500.00, with an additional case involving annuity payments. The median amount past pain and suffering award in these 35 cases was $165,000.00, with awards falling within the first and third quartiles ranging from $155,000.00 to $180,000.00.

agreement which provided him with a lump sum amount equivalent of almost a year of his salary. Exhibit 31 at 17-26.

Still, the amount proposed by Respondent ($58,000.00) is clearly too low. As I have explained previously during expedited "Motions Day" hearings, GBS pain and suffering awards generally should be higher than in matters involving a less frightening and physically-alarming injury, such as SIRVA. And as noted by Petitioner, I have routinely rejected Respondent's contention that proffered amounts offer better guidance than reasoned decisions by a judicial neutral. *Sakovits v. Sec'y of Health & Hum. Servs.,* No. 17-1028V, 2020 WL 3729420, at \*4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

Out of the cases cited by Petitioner, I find *Sand* offers the best comparison to the facts and circumstances suffered by Petitioner. Like Mr. Walter, the *Sand* petitioner's condition was initially attributed to another cause, cervical radiculopathy, and he was not properly diagnosed with GBS until five months after his initial symptoms. *Sand,* 2021 WL 4704665, at \*6. However, the *Sand* petitioner's GBS illness was still described as mild, and his most severe symptom (back pain) resolved within four months, albeit with Gabapentin, rather than IVIG therapy. *Id.* Furthermore, the cases cited by Petitioner involving greater pain and suffering awards all involved some inpatient habilitation and/or outpatient physical therapy. *Shankar,* 2022 WL 2196407, at \*5; *Weil,* 2023 WL 1778281, at \*4-5; and *W.B.*, 2020 WL 5509686, at \*4-5. Thus, I find the same amount awarded in the *Sand* case, **$130,000.00, constitutes an appropriate past pain and suffering award in this case.**

## IV.     Appropriate Compensation for Past Unreimbursed Expenses

Respondent argues I should award $1,473.60 for past unreimbursed expenses, $144.56 less than the $1,618.16 requested by Petitioner. Opp. at 17. Although a portion of this discrepancy is due to the different mileage rates employed by the parties, Respondent maintains Petitioner has not provided sufficient documentation to support the reimbursement request for some out-of-pocket expenses. *Id.* at 13

To support this later argument, Respondent cites exact page numbers containing these entries. *Id.* (citing Exhibit 32 at 13, 16-20 (containing examples such as a handwritten note indicating $5.00 was paid)). He does not, however, identify the exact amounts he disputes. Given the de minimis amount of the handwritten entry ($5.00) and billing records which clearly show Petitioner's copay amounts, I will reimburse all amounts sought in this case.

Regarding the question of mileage rate, Respondent argues that the reasoning articulated in *Williams* - that the business mileage rate is a more accurate reflection of the true cost of any driven mileage because it is employed in a more dollar-to-dollar deduction for tax purposes, is flawed. Opp. at 14-15 (citing *Williams,* 1996 WL 608455, at \*2). He also maintains that the *Williams* special master failed to consider the Vaccine Act's requirement that "a claimed expense must be 'reasonably necessary,' [which] constitutes a limitation on the Program's generosity to petitioners." *Id.* at 16 (citing *Williams,* 1996 WL 608455, at \*2; Section 15(a)(1)(A)(iii)(I)). By focusing on the true cost of any driven mileage, Respondent insists *Williams* ignores the requirement that compensation not optimize a person's quality of life, but only be reasonably necessary. *Id.* at 16 (citing *Earls v. Sec'y of Health & Hum. Servs.,* No. 90-0070V, 1991 WL 444454, at \*3 (Fed Cl. Spec. Mstr. Mar. 18, 1991)).

In his reply, Petitioner maintains that "the special master in *Williams* properly evoked the reasonably necessary requirement of [Section] 15(a)(1)(B) with respect to travel costs." Reply at 12. He "urges [me] to not diverge from the already established sound determination of *Williams, Ashe-Robinson,* and *Gibson*[8]." Reply at 14.

Contrary to Respondent's argument, application of the business rate does not amount in an *optimized* award, but rather than one that is consistent with the Act's emphasis on "reasonable" damages. An example of an "optimized" award might be providing compensation for a petitioner to rent, or buy, a luxury vehicle for more comfortable travel to their vaccine injury related medical appointments, as opposed to using their own vehicle – and indeed such an award would be prohibited. But the same is not true simply because a higher rate (which best captures the *actual* vehicle usage costs) is appropriate.

Furthermore, other than disagreeing with the reasoning of *Williams,* Respondent has not offered evidence or legal citation supporting application of the lower medical rate herein. He has not, for example, shown that any other federal compensatory statutory frameworks apply the lower medical rate in comparable circumstances, and/or follow the I.R.C. differentiation of rates.

A petitioner's *actual* travel expenses when using their own vehicle include not only the operating costs for the mileage incurred, but also the fixed costs for the mileage incurred. Clearly, each mile driven in a vehicle increases wear and tear, thereby increasing fixed costs (*i.e.*, depreciation, repairs, etc.). Thus, an award based only upon

---

[8] *Williams v. Sec'y of Health & Hum. Servs.,* No. 99-2239V, 1996 WL 608455 (Fed. Cl. Spec. Mstr. Oct. 10, 1996); *Ashe-Robinson v. Sec'y of Health & Hum. Servs.,* No. 94-1096V, 1997 WL 54350 (Fed. Cl. Spec. Mstr. Jan. 23, 1997); *Gibson v. Sec'y of Health & Hum. Servs.,* No. 20-0243V, 2022 WL 17820891, at \*12 (Fed. Cl. Spec. Mstr. Oct. 5, 2022).

the operating costs of the vehicle would not represent a petitioner's "actual" expenses incurred.

Moreover, while the Tax Code may reasonably distinguish between levels of deduction for vehicle usage, based upon whether the car was used for a business purpose or not, that same distinction may not be proper in the context of a Vaccine Act award. This seems, to some extent, to have been the thinking of the *Williams* special master. Application of the higher rate is ultimately consistent with the Act's language. Accordingly, and in keeping with my own prior decisions, I find that Petitioner's travel expenses should be reimbursed using the IRS business mileage rate employed in *Williams. See Kleinschmidt v. Sec'y of Health & Hum. Servs.*, No. 20-0680V, 2023 WL 9119039, at *7 (Fed. Cl. Spec. Mstr. Dec. 5, 2023); *Gibson v. Sec'y of Health & Hum. Servs.*, No. 20-0243V, 2022 WL 17820891, at *12 (Fed. Cl. Spec. Mstr. Oct. 5, 2022). **I award the full amount Petitioner requests for his actual unreimbursed expenses, $1,618.16.**

### Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $130,000.00 represents a fair and appropriate amount of compensation for Petitioner's past/actual pain and suffering.[9] Additionally, I find he is entitled to the amount of past/actual unreimbursed expenses he requests, $1,618.16.**

**I therefore award Petitioner a lump sum payment of $131,618.16, representing compensation in the amounts of $130,000.00 for actual pain and suffering and $1,618.16 for actual unreimbursable expenses in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[10]

---

[9] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master